[No. E007463. Fourth Dist., Div. Two. May 16, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
OMAR FUENTES MARTINEZ, Defendant and Respondent.

## COUNSEL

Grover C. Trask II, District Attorney, Don R. Inskeep, Assistant District Attorney, Gary Tranbarger and Michele D. Levine, Deputy District Attorneys, for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Jay M. Bloom, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

David L. Tucker, Jr., and Robert F. Howell, under appointments by the Court of Appeal, for Defendant and Respondent.

## OPINION

**McKINSTER, J.**—In this case we conclude that defendant's 1980 Texas murder conviction was for an offense which, under Texas law, included all of the elements of second degree murder as defined by California law, and, therefore, constituted a prior murder conviction within the meaning of Penal Code section 190.2, subdivision (a)(2)[1]. We therefore reverse the trial court's order denying the prosecution's motion, pursuant to section 871.5, to reinstate the prior-murder special-circumstance charge based on that Texas murder conviction, after the magistrate did not hold defendant to answer on that charge following a postindictment preliminary hearing.

### PROCEDURAL BACKGROUND

After the grand jury returned a "true bill," the district attorney filed an indictment charging defendant with the 1988 murder of Victor Mares Castillo. The district attorney included charges in the indictment that defendant used a firearm in the commission of the murder and that defendant previously had been convicted of murder, within the meaning of section 190.2, subdivision (a)(2), in Harris County, Texas.[2] Defendant requested a postindictment preliminary hearing, which the trial court granted only on the prior-murder special-circumstance charge, defendant earlier having been held to answer on the murder charge. (See fn. 2, *ante*.)

At the preliminary hearing, the district attorney presented evidence to prove that in 1980 defendant (using a different name) pled guilty in Texas to a charge of murder under section 19.02, subdivision (a)(1) of the Texas Penal Code. In addition, the district attorney presented extensive written and oral

---

[1] All further citations are to the Penal Code unless otherwise indicated.

[2] The district attorney earlier had filed a felony complaint charging defendant with the murder of Castillo. After defendant was held to answer on that charge, and a felony information was filed in superior court, the district attorney apparently discovered defendant's Texas murder conviction. The district attorney presented the information about the Texas conviction and the murder of Castillo to the grand jury which returned a "true bill," based upon which the district attorney filed an indictment charging defendant with the murder of Castillo and further charging the Texas murder as a prior murder special circumstance under section 190.2, subdivision (a)(2). After the trial court granted the district attorney's motion to consolidate the original felony information with the indictment, defendant moved for a post-indictment preliminary hearing on both the murder charge and the prior-murder special-circumstance charge. The trial court granted defendant's motion only as to the special circumstance charge, and, at the conclusion of the preliminary hearing, the magistrate did not hold defendant to answer on that charge. The district attorney went back to the grand jury and obtained a second indictment of defendant, which is the indictment referred to above.

argument addressing the issue under section 190.2, subdivision (a)(2)[3] of whether defendant's Texas murder conviction was an offense "which if committed in California would be punishable as first or second degree murder." According to the district attorney's argument, defendant's conviction under Texas Penal Code section 19.02, subdivision (a)(1) was equivalent to a second degree murder conviction in California, and, thus, the requirements of section 190.2, subdivision (a)(2) were met.

Defendant, on the other hand, asserted, among other things, that California, unlike Texas, recognizes the concept of imperfect self-defense articulated in *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]. According to defendant, the Supreme Court in *Flannel* created a "new type of manslaughter" when it held that "[a]n honest but unreasonable belief that it is necessary to defend oneself from imminent peril to life or great bodily injury negates malice aforethought, the mental element necessary for murder, so that the chargeable offense is reduced to manslaughter." (*Id.* at p. 674.) Thus, defendant argued that "a defendant could be convicted of murder in Texas by conduct which would have lead [*sic*] to a mitigation of the charge to manslaughter in California."

At the conclusion of the presentation of evidence, the magistrate found that defendant was the person "involved in the Texas proceeding" and, thus, apparently concluded that defendant had, in fact, been convicted, by defendant's guilty plea, of murder under Texas Penal Code section 19.02, subdivision (a)(1). In considering whether that conviction was for an offense which if committed in California would be punishable as first or second degree murder, thereby meeting the requirements of section 190.2, subdivision (a)(2), the magistrate concluded, citing *People* v. *Andrews* (1989) 49 Cal.3d 200 [260 Cal.Rptr. 583, 776 P.2d 285], that the magistrate must consider whether the crime of murder under Texas Penal Code section 19.02, subdivision (a)(1) includes all of the elements of murder under California law. According to the magistrate, and apparently based on the magistrate's understanding of *Andrews*, "if the crime would be murder in Texas, but if it was committed in California, the [California] statute would allow it to be . . . manslaughter, . . . that [Texas offense] would not qualify [under section 190.2(a)(2)]."

Based on foregoing analysis, the magistrate considered not only the elements of murder under the previously noted Texas Penal Code section,

---

[3]Section 190.2 provides, in pertinent part, that "(a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.4, to be true: . . . (2) The defendant was previously convicted of murder in the first degree or second degree. For the purpose of this paragraph an offense committed in another jurisdiction which if committed in California would be punishable as first or second degree murder shall be deemed murder in the first or second degree."

but also whether Texas, either by statute or case law, recognized a *Flannel*-type defense. After expressing initial doubt about whether murder under Texas Penal Code section 19.02, subdivision (a)(1) was equivalent to murder in California, the "bottom line," according to the magistrate, was "that Texas in no way recognizes *Flannel . . . .*" Accordingly, the magistrate stated that, "Basically, I am going to not hold the defendant to answer [on the prior murder special circumstance], because I don't believe the Texas crime is sufficient under California law."

Thus, the magistrate found "that [defendant's] Texas conviction does not meet the requirements of Penal Code section 190.2(a)(2)." Thereafter, the district attorney filed a motion, pursuant to section 871.5, to reinstate the special circumstance charge, asserting the same argument presented to the magistrate during the preliminary hearing, i.e., that defendant's Texas murder conviction was equivalent to second degree murder in California. The trial court denied that motion, essentially on the same rationale as that of the magistrate, and the district attorney filed the instant appeal pursuant to section 871.5, subdivision (f) after first obtaining a stay of the trial court proceeding.

## DISCUSSION

■ The issue presented in this appeal is whether defendant's Texas murder conviction "was for an offense, which if committed in California, would be punishable as first or second degree murder" so as to constitute a prior-murder special circumstance under section 190.2, subdivision (a)(2). As previously noted, both the magistrate, in dismissing the special circumstance allegation, and the trial court, in denying the district attorney's motion to reinstate that allegation, found that Texas did not recognize a *Flannel*-type defense, therefore defendant's Texas murder conviction might have been for an offense which only would have been manslaughter had the same offense been committed in California.[4]

In our view, whether Texas does or does not recognize a *Flannel* defense is irrelevant in determining whether defendant's Texas murder conviction was for "an offense which if committed in California would be punishable as first or second degree murder" within the meaning of section 190.2, subdivision (a)(2). We conclude, relying upon *People* v. *Andrews* (1989) 49 Cal.3d 200 [260 Cal.Rptr. 583, 776 P.2d 285], that the relevant inquiry under

---

[4]The magistrate and the trial court, as above noted, did not dispute that defendant pled guilty to violating Texas Penal Code section 19.02, subdivision (a)(1), which defines the crime of "murder." Texas also recognizes three other forms of criminal homicide, specifically, capital murder, voluntary manslaughter, and involuntary manslaughter, defined, respectively, in Texas Penal Code sections 19.03, 19.04, and 19.05.

section 190.2, subdivision (a)(2) is limited to determining whether the elements of the crime of which the defendant was convicted in the foreign jurisdiction include the elements of either first or second degree murder under California law. (*Id.* at p. 223.) Although the court in *Andrews* did not specifically address the question of whether the defendant's Alabama murder conviction included the elements of first or second degree murder as defined by California law, the court did reject the defendant's argument that his Alabama murder conviction, based on an offense committed when the defendant was 16 years old, could not support the jury's true finding under section 190.2, subdivision (a)(2) because the defendant might have been treated as a juvenile had the defendant committed the murder in California, and, therefore, would not have been punished for first or second degree murder.

In rejecting the foregoing argument, the Supreme Court concluded, contrary to the defendant's assertion, that under section 190.2, subdivision (a)(2) it was not necessary to determine whether an offense committed in another jurisdiction would be *punished* as first or second degree murder in California. In reaching this conclusion, the court noted, "The language of the statute does not support defendant's interpretation. Defendant is attempting to characterize the words 'would be punishable' as if they were synonymous with the term 'would be punished.' 'Punishable' has been defined as '[d]eserving of or capable or liable to punishment; capable of being punished by law or right.' [Citation.] The word does not denote certainty of punishment, but only the capacity therefor. Any minor between the ages of 16 and 18 who commits murder in California, and has been found unfit to be treated as a juvenile, can be tried and convicted as an adult and thus be liable to punishment as a murderer. [¶] To accept defendant's statutory construction would mean that every time the prosecution alleged a murder conviction from a foreign jurisdiction, the trial court must determine whether the guilt ascertainment procedures of that jurisdiction afforded the same procedural protections as those in California. We do not read such a requirement into the statute. . . . [¶] Rather, it appears the intent was to limit the use of foreign convictions to those which include all the elements of the offense of murder in California, and defendant has failed to show otherwise." (*People* v. *Andrews, supra,* 49 Cal.3d at pp. 222-223.)

We conclude that the magistrate and trial court, by focusing on whether Texas recognized a *Flannel* defense, were, in effect, attempting to determine whether defendant would have been *punished* for murder had he committed his offense in California. In other words, both judges apparently interpreted the phrase "would be punishable" as requiring "certainty of punishment" rather than "the capacity therefor." Under *Andrews,* the relevant inquiry is whether the offense of which the defendant was convicted in Texas includes

the elements of first or second degree murder in California such that the Texas offense was one which had the capacity for punishment as first or second degree murder. The concept of imperfect self-defense as defined in *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1] is not an element of either first or second degree murder in California, but rather is a mitigating factor, which, when raised by sufficient evidence, *negates* an element of murder, specifically, malice. (*Id.* at pp. 674-680.) Accordingly, we conclude that the magistrate and the trial court exceeded the scope of the relevant inquiry under section 190.2, subdivision (a)(2) by considering whether Texas recognized the concept of imperfect self-defense.

As previously noted, both the magistrate and the trial court relied primarily on the absence of a *Flannel* defense in making their respective rulings and, therefore, did not expressly determine whether murder under Texas Penal Code section 19.02, subdivision (a)(1), included the elements of either first or second degree murder under California law. Consequently, we must now make that determination.

Under Penal Code section 19.02, subdivision (a)(1) of Vernon's Texas Codes Annotated, "A person commits [murder] if he . . . intentionally or knowingly causes the death of an individual." California, on the other hand, defines murder, specifically second degree murder, as "the unlawful killing of a human being . . . with malice aforethought." (§ 187) As was pointed out in the trial court, Texas has adopted the Model Penal Code definition of murder, which not only dispenses with the term "malice aforethought" to describe the requisite mental state but also does not differentiate between first or second degree murder. Because premeditation and deliberation, required under California law for first degree murder (§ 189), is not a concept recognized in Texas, we are of the view that defendant's Texas murder conviction does not include the elements of first degree murder as defined by California law. Accordingly, we need determine only whether a conviction for an offense under the foregoing Texas Penal Code section includes the elements of second degree murder under California law. Thus, we must determine whether "intentionally or knowingly" causing the death of another individual, as defined by Texas statutory and case law, is equivalent to an "unlawful killing of another human being with malice aforethought." That determination, in our view, depends, in turn, on whether the culpable mental states of "intentionally" or "knowingly," as defined by Texas law, are equivalent to "malice aforethought" as defined by California law. We conclude, for reasons which we shall explain, that the mental states of "intentionally" or "knowingly" are the functional equivalents of "express malice" or "implied malice," respectively, such that defendant's Texas murder conviction includes the elements of second degree murder under California law.

Turning to Texas law, we note, at the outset, that Texas Penal Code section 19.02, subdivision (a)(1) became effective in 1974, as part of an extensive revision of Texas criminal statutes which, among other things, followed the Model Penal Code "analysis of the traditional mens rea concept and translation of that concept into four carefully defined terms" (Vernon's Texas Pen. Code Ann., § 6.03, Practice Commentary, p. 87) which include "intentionally" and "knowingly," both of which are defined in Texas Penal Code section 6.03. The Practice Commentary to section 6.03 further notes that, "Rather than introduce novel concepts, . . . section [6.03] analytically dissects the culpable mental states traditionally used in the criminal law and distinguishes them one from the other; consolidates the 67 different terms previously in use to describe these culpable mental states; and precisely and parsimoniously defines the resulting four terms used consistently throughout the new code to describe the mental element of each offense." (*Id.* at p. 88.) The foregoing suggests to us that the terms "intentionally" and "knowingly" as applied to the crime of murder under Texas Penal Code section 19.02, subdivision (a)(1) do not create previously unknown mental states, but, rather, define the traditional mens rea concept of malice in more precise and comprehensible language. In other words, what distinguishes "murder" in California from "murder" in Texas is terminology, not substance.[5]

With that in mind, we next turn to the statutory definitions of the two terms here in question. "Intentionally" is defined in Texas Penal Code section 6.03, subdivision (a) as follows: "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Thus, under Texas law, "intentionally" relates to the nature of a person's conduct or to a result of a person's conduct such that an intentional murder under section 19.02, subdivision (a)(1) of the Texas Penal Code is one where the defendant "intended to engage in the act that caused the death . . . [and] . . . also . . . specifically intended that death result from that conduct." (*Morrow* v. *State* (Tex.Crim.App. 1988) 753 S.W.2d 372, 375-376, fn. 3.) In our view, the mental state which Texas law refers to as "intentionally," when applied to the Texas crime of murder, is simply another way of defining the mental state which California refers to as "express malice," that

_____

[5]We find further support for the above-noted conclusion in the Practice Commentary to Texas Penal Code section 19.02, which, in pertinent part, notes, "Section 19.02 considerably simplifies the definition of murder. Together with Sections 19.04 and 19.05 (manslaughter [voluntary and involuntary, respectively]), it clearly distinguishes between the unprovoked intentional or knowing killing, which has traditionally been treated as murder, and the reckless killing, which the common law designated involuntary manslaughter. The concept of malice, which is virtually meaningless, is deleted, and Section 19.02(a)(1) instead uses two carefully defined terms (see Section 6.03), 'intentional' and 'knowing,' to describe the culpable mental state necessary to establish murder."

is, a deliberate intent to kill (§ 188). Accordingly, we conclude that an "intentional" killing in Texas is equivalent to a killing with "express malice" in California.

Similarly, we conclude that the mental state of "knowingly," as applied to the definition of murder under Texas Penal Code section 19.02, subdivision (a)(1), expresses, albeit in different terms, the mental state which California refers to as "implied malice." Under California law, implied malice exists when the killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act was deliberately performed "with knowledge of the danger to, and with conscious disregard for, human life." (See CALJIC No. 8.11 (5th ed. 1988).) The term "knowingly," is defined in Texas Penal Code section 6.03, subdivision (b) as follows: "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

Under the foregoing definition, the mental state of "knowingly" may pertain to the nature of the defendant's conduct, the circumstances surrounding the defendant's conduct or the result of the defendant's conduct. Although we have not found a Texas case which specifically applies the definition of "knowingly" to the crime of murder under section 19.02, subdivision (a)(1), we are of the view that the proper application is suggested in *Morrow* v. *State, supra*, 753 S.W.2d 372. Thus, a knowing killing under Texas law would be one where a defendant is aware of the nature of the defendant's conduct, or is aware of the circumstances surrounding that conduct, and is further aware that death of another person is reasonably certain to result from that conduct.

The Texas mental state of "knowingly" and the California mental state of "implied malice" both focus on the subjective awareness, or knowledge, of the defendant. In Texas, a defendant knowingly causes the death of another, and thus commits murder, when the defendant is subjectively aware that death is "reasonably certain to result" from the defendant's conduct. In California, a defendant kills another human being with implied malice, and likewise commits murder, when the defendant is subjectively aware of the life-threatening risk involved in the defendant's conduct. (See *People* v. *Dellinger* (1989) 49 Cal.3d 1212, 1221 [264 Cal.Rptr. 841, 783 P.2d 200].) Based on the foregoing analysis, we conclude, as previously stated, that the Texas mental state of "knowingly" includes each of the concepts embodied

in the mental state of "implied malice," such that a "knowing" killing in Texas is equivalent to a killing with "implied malice" in California.

Having determined that the mental states which Texas describes as "intentionally" and "knowingly" are equivalent to the mental states of "express malice" and "implied malice" as defined by California law, we conclude that murder under Texas Penal Code section 19.02, subdivision (a)(1) includes each of the elements of murder under section 187. Accordingly, we conclude that defendant's Texas murder conviction under the foregoing Texas Penal Code section was for "an offense which if committed in California would be punishable as second degree murder" such that the magistrate erred in not holding defendant to answer on the section 190.2, subdivision (a)(2) special circumstance charge, and the trial court erred in denying the district attorney's motion to reinstate that charge.

## DISPOSITION

The order denying the district attorney's motion pursuant to section 871.5 to reinstate the allegation, under section 190.2, subdivision (a)(2), that defendant had previously been convicted of murder in Texas is reversed, and the trial court is directed to vacate that order and enter a new order granting that motion.

Ramirez, P. J., and Dabney, J., concurred.

A petition for a rehearing was denied June 7, 1991, and respondent's petition for review by the Supreme court was denied August 1, 1991.